UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                        :
JOSE GARCIA, et al.,                    :       CASE NO. 1:14-CV-01514
                                        :
            Plaintiffs,                 :
                                        :
vs.                                     :       OPINION & ORDER
                                        :       [Resolving Doc. 34]
SAR FOOD OF OHIO, INC.,                 :
                                        :
            Defendant.                  :
                                        :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiffs Jose Garcia and Raymond Sutton sue Defendant SAR Food of Ohio, Inc. ("SAR

Food") for failing to pay overtime as required by the Fair Labor Standards Act ("FLSA") and state

law. Specifically, Plaintiffs say that Defendant SAR Food frequently required Plaintiffs to work

beyond the end of their scheduled shifts without recording or paying Plaintiffs for the extra hours.[1]

Plaintiffs make these claims even though SAR paid compensation, including overtime compensation,

consistent with weekly reports that employees initialed and weekly reports that employees had an

opportunity to change to for additional overtime.

        Defendant SAR Food moves for summary judgment, primarily claiming that Plaintiffs failed

to use available procedures for reporting uncompensated overtime or other discrepancies between

hours worked and hours paid.[2]  In the alternative, Defendant SAR Food moves for summary

judgment that any FLSA violations that occurred were not willful and happened despite Defendant

SAR Food's good faith efforts to comply with the FLSA.

        Although Plaintiffs did not follow established procedures that allowed Plaintiffs to claim

_____

[1] Doc. 20.
[2] Doc. 34-1.  The Plaintiffs have responded, Doc. 38, and Defendant SAR Food has replied, Doc. 40.

Case No. 1:14-CV-01514
Gwin, J.

added overtime pay, genuine issues of material fact remain as to whether Defendant SAR Food

nonetheless knew or should have known that Plaintiffs were not being properly paid for all hours

worked.  No genuine issues of material fact remain, however, as to whether Defendant SAR Food

acted in good faith and with reasonable grounds.  The Court therefore **DENIES** Defendant SAR

Food's motion for summary judgment as to liability, but **GRANTS** the motion as to good faith and

willfulness.

## I. Background

Because the case is before the Court on Defendant SAR Food's summary judgment motion,

the Court describes the facts in the light most favorable to Plaintiffs, the non-moving parties.

Defendant SAR Food owns and operates several Ohio "Sarku Japan" and "Sakkio Japan"

restaurants.[3/]  These restaurants operate in shopping center food courts or similar settings.

Plaintiff Jose Garcia works at the South Park store, and has previously worked at the Tower

City store.  Plaintiff Garcia also worked at other stores for brief periods of time.[4/]  Plaintiff Raymond

Sutton is a former employee of Defendant SAR Food.  Sutton worked at the South Park and Tower

City stores.[5/] The Plaintiffs held a variety of hourly positions, such as cook.[6/]  Both Plaintiffs were

nonexempt hourly employees covered by the FLSA and the corresponding Ohio law.

Plaintiffs daily work hours varied.  Defendant SAR Food posted Plaintiffs' work schedules

at the beginning of the week.[7/]  Often, the posted schedules called for more than forty hours of work

---

[3/]Doc. 34-2 at 1.
[4/]Doc. 38-3 at 64-66.
[5/]Doc. 38-2 at 43-44.
[6/]Doc. 38-2 at 14-15; Doc. 38-3 at 15.
[7/]Doc. 38-2 at 17; Doc. 38-3 at 42.

-2-

Case No. 1:14-CV-01514
Gwin, J.

per week.[8/]  Plaintiffs agree that Defendant SAR Food properly paid Plaintiffs for all hours scheduled and all hours employees claimed on weekly submissions, including overtime for all scheduled hours over forty.[9/]

Plaintiffs say, however, that they were frequently required to stay beyond their scheduled shifts.  They say that the stores would sometimes stay open past their stated closing time to help store supervisors hit sales numbers that would give bonuses or to serve expected waves of potential customers.[10/]  As one example, the Tower City store, which is close to several Cleveland sports stadiums, would stay open late in order to sell to fans headed to games.[11/]

When the stores stayed open late, Plaintiffs say they were expected to stay until all tasks, including cleanup, had been completed.  Although Plaintiffs were never directly ordered to stay past their scheduled hours, Plaintiff Sutton indicated that "if you don't clean the place and you leave it a mess, I'm pretty sure the next day you're not going to have a job."[12/]  Plaintiffs say that the amount of uncompensated time varied by store and by week, but often totaled several hours per week.[13/]

Defendant SAR Food kept track of employee time using the schedules set by each store's manager at the beginning of the week.[14/]  Defendant SAR Food says that employees are told to make corrections when their actual work hours differ from those posted on the schedule, including on days when they stay late.[15/]  Then, at the end of the week, the managers are supposed to give the schedule

---

[8/] *E.g.*, Doc. 38-3 at 14.

[9/] Doc. 38 at 3.

[10/] Doc. 38-2 at 24-25; Doc 38-3 at 99-100.

[11/] Doc. 38-2 at 53.

[12/] *Id.* at 25-26.

[13/] Doc. 38-2 at 66, 77; Doc. 38-3 at 99.

[14/] Doc. 34-2 at 3-4.

[15/] *Id.* at 4.

-3-

Case No. 1:14-CV-01514
Gwin, J.

with the modifications to each employee to initial, before sending the schedule in for processing.[16]

Defendant SAR Food has submitted numerous declarations from employees that attest that this

modification procedure was actually used and that employees were paid for hours worked beyond

their scheduled time when the employee claimed additional work hours.[17]

　　　　　Both Plaintiffs testify that they never modified the hours listed on their schedules.  Plaintiff

Garcia explained that he "didn't want to seem petty."[18]  Plaintiff Sutton says he did not have access

to the computer that would allow him to make changes.[19]

　　　　　Both Garcia and Sutton testified that although they were supposed to initial their own hours

worked to confirm accuracy, their managers would sometimes initial the hours report for them.

Typically, supervisors initialed these submissions when Garcia and Smith were unavailable.  Both

Garcia and Sutton pointed to time sheets with their initials in someone else's handwriting.[20]  They

suggest that these actions were driven by pressure from upper management to make sales quotas[21]

and limit hours.[22]

　　　　　Throughout the time relevant to this case, the paystubs issued by Defendant SAR Food

contained the statement "Any questions concerning your pay, please call . . . Sarku Japan Payroll

Department."[23]

---

[16]*Id.*

[17]Doc. 34-3; Doc. 34-4; *see, e.g.*, Doc. 34-4 at 2 ("These modifications occur almost every week, for different reasons.").

[18]Doc. 38-3 at 45-46.

[19]Doc. 38-2 at 28.

[20]*E.g.*, Doc. 38-2 at 34; Doc. 38-3 at 58.

[21]Doc. 38-2 at 24-25; Doc. 38-3 at 100.

[22]Doc. 38-3 at 51 ("Well, that's what I was told by the managers, nothing past 59 hours; either that or they–I believe they got yelled at.").

[23]*See* Doc. 38-2 at 27; Doc. 38-3 at 29-30.  The paystubs also provided the Payroll Department's phone number.

Case No. 1:14-CV-01514
Gwin, J.

Neither Plaintiff called the Payroll Department. Plaintiff Garcia explained that he did not call because he felt intimidated,[24/] and Plaintiff Sutton explained that he had not thought it worth calling over the amount of time at issue.[25/] Both Plaintiffs admitted that, for similar reasons, they never complained that their time sheets did not match their actual hours worked.[26/]

Defendant SAR Food also maintained an employee handbook that forbade off-the-clock work, that encouraged employees to raise any concerns about their pay with their manager or the payroll department, and that prohibited retaliation for doing so.[27/] But neither Garcia nor Sutton received a copy of this handbook.[28/] Indeed, Plaintiff Garcia testified that when he asked to see the employee handbook, he was told that "it was only for managers."[29/]

Plaintiffs Garcia and Sutton now bring overtime claims under the FLSA and Ohio law. Plaintiffs also seek to represent an FLSA collective action for "[a]ll present and former hourly employees who worked at company-owned 'Sarku Japan' restaurants in Ohio during the three years preceding the commencement of this action."[30/] This collective action has been conditionally certified.[31/] Plaintiffs Sutton and Garcia also seek to represent a similar class for their Ohio state law claims, except that the relevant time period is two years.[32/]

---

[24/]Doc. 38-3 at 30.

[25/]Doc. 38-2 at 27.

[26/]Doc. 38-2 at 33; Doc. 38-3 at 45-46.

[27/]*See* Doc. 34-2 at 5.

[28/]*See* Doc. 38-2 at 23; Doc. 38-3 at 20.

[29/]Doc. 38-3 at 20. Defendant SAR Food also points out that Stanley Poon, who is responsible for ensuring the company's compliance with the FLSA and other labor laws, takes actions such as reading court decisions and Department of Labor guidance to keep his knowledge of legal requirements current. Doc. 34-2.

[30/]Doc. 20 at 6.

[31/]Docs. 17, 18. Defendant SAR Food's decertification motion is currently pending, Doc. 42, but not yet ripe. The Court will resolve this motion by later order.

[32/]Doc. 20 at 7.

Case No. 1:14-CV-01514
Gwin, J.

## II. Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[33] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[34] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[35] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[36] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[37]

The Court does not, however, consider declarations submitted in opposition to summary judgment if the declarations directly contradict a declarant's prior sworn statement "unless the party opposing summary judgment provides a persuasive justification for the contradiction."[38] Although this rule is usually stated in terms of a later declaration contradicting prior sworn deposition testimony, it also applies to a later declaration contradicting other types of earlier sworn statements.[39]

### B. Herrera Declaration

As an initial matter, the parties dispute whether the Court should consider a declaration

---

[33] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

[34] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[35] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[36] *Id.* at 586.

[37] *Killion*, 761 F.3d at 580 (internal citation omitted).

[38] *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).

[39] *See Thompson v. Bruister & Assocs., Inc.*, No. 3:07-00412, 2013 WL 1092218, at *5 (M.D. Tenn. Mar. 15, 2013) (applying the rule to prior sworn interrogatory responses).

Case No. 1:14-CV-01514
Gwin, J.

submitted by opt-in Plaintiff Alfredo Herrera in resolving Defendant SAR Food's summary judgment motion.  Plaintiffs attached this declaration to their summary judgment opposition.[40]  Defendant SAR Food says that this declaration contradicts an earlier declaration that Herrera provided, which Defendant SAR Food had attached to its summary judgment motion.[41]

The Court agrees with Defendant SAR Food that the Herrera declarations are directly contradictory and that the later one should not be considered.  In the earlier sworn declaration, Herrera said that he almost never worked outside his scheduled shift times, that his time sheets and pay were properly adjusted the "couple of times" he did, and that Defendant SAR Food "do[es] not have a practice or policy that results in being paid for fewer hours than the hours [Herrera] actually worked."[42]  In the later declaration, Herrera says that, throughout his employment, he was frequently required to stay past the end of his shift, that Defendant SAR Food often did not allow modifications to his time sheets or the time sheets of employees he supervised, and that his supervisor forced him to sign off on inaccurate time sheets.[43]

Because the statements made in these two declarations are directly contradictory and because the later declaration does not provide a "persuasive justification for the contradiction[s],"[44] or indeed, even acknowledge their existence, the Court will not consider Herrera's later declaration.

**C. FLSA Liability**[45]

1. Legal Standard

---

[40] Doc. 38-4.
[41] *See* Doc. 34-4 at 14-16.
[42] *Id.* at 15.
[43] Doc. 38-4.
[44] *Aerel*, 448 F.3d at 908.
[45] The overtime requirements under Ohio law are identical to those under the FLSA.  Ohio Rev. Code § 4111.03(A).  The Court thus does not separately consider Plaintiffs' state law overtime claims.

Case No. 1:14-CV-01514
Gwin, J.

The Fair Labor Standards Act requires that employees be paid "at a rate not less than one and one-half times the regular rate" for all hours worked above forty per week.[46]  Under the FLSA, hours worked includes all hours that the employer "suffer[s] or permit[s] [the employee] to work," not only hours that are regularly scheduled or expressly requested.[47]  "[I]t is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so."[48]  An employee cannot agree to waive the overtime pay requirement.[49]

"To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he 'performed work for which he was not properly compensated.'"[50]  Under the Sixth Circuit's recent decision in *Moran v. Al Basit LLC*, employees can carry this burden solely with their own deposition testimony, even in the face of contrary time sheets.[51]

Although employees cannot waive FLSA entitlements, some employee acts or omissions can defeat an FLSA claim.  In *White v. Baptist Memorial Hospital*, the Sixth Circuit stated that "[i]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process."[52]  In doing so, the Sixth Circuit noted that "there was no way [the defendant] should have known [the

---

[46] 29 U.S.C. § 207(a)(1).

[47] 29 U.S.C. § 203(g); *see* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.").

[48] 29 C.F.R. § 785.13.

[49] *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

[50] *See Moran v. Al Basit LLC*, ___ F.3d ___, 2015 WL 3448655 (6th Cir. June 1, 2015) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

[51] *Id.*

[52] *White v. Baptist Mem'l Hosp.*, 699 F.3d 869,876 (6th Cir. 2012).

Case No. 1:14-CV-01514
Gwin, J.

plaintiff] was not being compensated" for time worked during missed meal breaks.[53]  It also distinguished cases in which employers "were otherwise notified of the employees' unreported work."[54]

Thus, under *White*, an employer can escape liability by pointing to the employee's failure to comply with established time reporting procedures where the employer neither knew nor should have known about the uncompensated work.  But *White* does not permit employers with knowledge of uncompensated work to avoid their FLSA obligations.  This distinction makes sense in light of the FLSA's non-waiver rule.  If an employer with knowledge of uncompensated time could evade FLSA liability where the employee failed to follow procedures, an employer and employee could effectively contract around the FLSA by contriving for the employee to simply not report all time he worked.

Accordingly, to survive Defendant SAR Food's summary judgment motion, Plaintiffs must put forward enough evidence to create a genuine dispute of fact as to (1) whether they worked uncompensated hours; and (2) whether Defendant SAR Food knew or should have known about the uncompensated hours.

    2. Analysis

The first question–whether Plaintiffs Garcia and Sutton have pointed to sufficient evidence that they worked uncompensated time–is close, but ultimately controlled by the Sixth Circuit's *Moran* decision.  The evidence the Plaintiffs put forward to support their claims of uncompensated work time is relatively thin.  It consists entirely of their own uncorroborated testimony, and Plaintiffs

---

[53]*Id.*; *see also Jones-Turner v. Yellow Enter. Sys, LLC*, 597 F. App'x 293 (6th Cir. 2015) (applying *White* by noting both the employees' failure to follow reporting procedures and the employer's lack of knowledge of uncompensated time).

[54]*Id.*

Case No. 1:14-CV-01514
Gwin, J.

admit that their claims conflict with the contemporaneous work schedules, work schedules the

Plaintiffs had at least some opportunity to correct.  Prior to *Moran*, multiple courts had held that

similar showings were not enough to survive summary judgment.[55]

In *Moran*, however, the Sixth Circuit held that a plaintiff's uncorroborated testimony was

enough to defeat summary judgment despite the existence of time sheets showing that no

uncompensated work had been done. That decision requires a finding that Plaintiffs Garcia and

Sutton put forward sufficient evidence to create a genuine issue of fact as to whether they performed

uncompensated work.

The second question–whether Plaintiffs have put forward enough evidence that Defendant

SAR Food knew or should have known of the uncompensated time–turns on the degree to which its

store supervisors' knowledge can be imputed to the Defendant company.  According to the Plaintiffs'

deposition testimony, the Plaintiffs' store supervisors approved time sheets that they knew reflected

less time than Plaintiffs actually worked.  Indeed, Plaintiffs say that in some cases, the supervisors

initialed false time sheets for the Plaintiffs without giving the Plaintiffs an opportunity to review

them.

There is thus at least a genuine issue of fact as to whether Plaintiffs' immediate supervisors

knew that Plaintiffs were not receiving all the overtime that they were due.  If imputed to Defendant

SAR Food, this knowledge would be enough under *White* for Plaintiffs to survive summary

judgment even though Plaintiffs never availed themselves of any of the myriad routes available to

them to claim the uncompensated work time.

---

[55]/*See, e.g.*, *McCrimon v. Inner City Nursing Home, Inc.*, No. 1:10-cv-392, 2011 WL 4632865, at *4-5 (N.D. Ohio Sept. 30, 2011); *Simmons v. Wal-Mart Assocs., Inc.*, No. 2:04-cv-51, 2005 WL 1684002, at *9-11 (S.D. Ohio July 19, 2005).

Case No. 1:14-CV-01514
Gwin, J.

The question then becomes whether the store supervisors' knowledge of Plaintiffs' uncompensated time should be imputed to Defendant SAR Food. In this case, although the question is again close, the answer is yes. In the FLSA context, courts have imputed knowledge from a supervisor to an employer where supervisors prevent employees from accurately reporting hours or where supervisors encourage employees to under-report hours.[56]

In this case, following *Moran*, crediting the Plaintiffs' testimony, and drawing all reasonable inferences in Plaintiffs' favor reveals a genuine issue of fact on Defendant SAR Food's constructive knowledge of the alleged violations. Plaintiffs' testimony could allow a reasonable jury to conclude that the store supervisors were aware that Plaintiffs were working after their scheduled shifts, but nonetheless knowingly submitted time sheets indicating that no such work occurred. And Plaintiff Garcia's testimony that managers told him that higher-ups at Defendant SAR Food would not approve more than 59 hours per week provides further support for the idea that the supervisors took at least some action to encourage under-reporting, thus potentially allowing constructive knowledge of the alleged violations to be imputed to Defendant SAR Food.

To be sure, Plaintiffs' concessions that they never changed the time sheets themselves, that they never complained about the uncompensated time, and that they never called the payroll department all work against Plaintiffs by suggesting that the store supervisors might not have discouraged truthful reporting. But in light of *Moran*, these are factors for a jury to weigh rather than

---

[56]/*See, e.g., Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1321-22 (11th Cir. 2007) (imputing the knowledge of supervisors such as school principals to a defendant school board where "a jury could conclude that Plaintiffs' truthful responses were squelched"); *see also Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797 (11th Cir. 2015) (rejecting an employer's unclean hands defense to an FLSA suit where the employee had violated company policy by not following time reporting procedures and had not made upper management aware of his concerns, but where the employee's immediate supervisor was aware of uncompensated time and had requested that the employee work off the clock).

Case No. 1:14-CV-01514
Gwin, J.

reasons to determine the liability issue at the summary judgment stage.[57]

Against that background, Plaintiffs have created a genuine issue of material fact as to whether Defendant SAR Food knew or should have known of uncompensated time. The Court thus **DENIES** Defendant SAR Food's motion for summary judgment on liability.

**D. FLSA Willfulness and Good Faith**

<u>1. Legal Standard</u>

In addition to seeking summary judgment on liability, Defendant SAR Food seeks summary judgment on two subsidiary issues. Defendant SAR first argues that even if sufficient evidence allows this case to go forward, any FLSA violations Defendant SAR Food may have committed were not "willful." This matters because the FLSA's statute of limitations is three years for willful violations, but only two years for non-willful violations.[58]

The employee has the burden of demonstrating willfulness by showing "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ."[59]

In a second argument, Defendant SAR Food argues that it acted in good faith and with reasonable grounds even if it violated the FLSA. This matters because the FLSA generally imposes liquidated damages on employers that violate the FLSA, but gives an exception where "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good

---

[57]/*Cf. Moran*, 2015 WL 3448655, at *4 ("Defendants emphasize the fact that Plaintiff's testimony is inconsistent with the allegedly contemporaneous timesheets Defendants provided to the court. But these time sheets do not amount to objective incontrovertible evidence of Plaintiff's hours worked. Plaintiff denies the validity of these timesheets, which were handwritten by Defendants, and contends that Defendants sanctioned his overtime work. Whether [Plaintiff's] testimony is credible is a separate consideration that is inappropriate to resolve at the summary judgment stage.").

[58]/29 U.S.C. § 255(a).

[59]/*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

-12-

Case No. 1:14-CV-01514
Gwin, J.

faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."[60]  The good faith component of the test is subjective, and the reasonable grounds component is objective.

The employer has the burden of demonstrating good faith and reasonable grounds, and the necessary showing is "substantial."[61]  "To prove that it acted in good faith, an employer 'must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions.'"[62]

In the Sixth Circuit, a finding of willfulness usually compels a finding that the employer did not act in good faith.[63]  Conversely, a finding that the employer acted in good faith generally stops a finding of willfulness.

### 2. Analysis

The record demonstrates that Defendant SAR Food took affirmative steps to comply with FLSA requirements.  Defendant SAR Food established a system for reporting unscheduled overtime that numerous and uncontested declarations say that many employees actually used.[64]  Defendant SAR Food also set up a call in number for employees who had questions about their paychecks, and published the number on all paystubs.[65]  And Defendant SAR Food had an employee in charge of maintaining FLSA compliance, including by staying aware of new developments in FLSA law.[66]

---

[60]/29 U.S.C. § 260.

[61]/*Martin v. Indiana Michigan Power*, 381 F.3d 574, 584 (6th Cir. 2004).

[62]/*Id.* (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991)).

[63]/*Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999).

[64]/Doc. 34-3; Doc. 34-4; *see, e.g.*, Doc. 34-4 at 2 ("These modifications occur almost every week, for different reasons.").

[65]/*See* Doc. 38-2 at 27; Doc. 38-3 at 29-30.  The paystubs also provided the Payroll Department's phone number.

[66]/Doc. 34-2.

-13-

Case No. 1:14-CV-01514
Gwin, J.

Moreover, it was objectively reasonable for Defendant SAR Food to conclude that its system led to FLSA compliance.  Particularly because other employees routinely used the modification system and because Plaintiffs Garcia and Sutton admit that they failed to use this procedure or otherwise raise the issue, it was not objectively unreasonable for Defendant SAR Food to believe it was paying Plaintiffs everything they were due under the FLSA.

Because Defendant SAR Food acted in good faith and had reasonable grounds for believing its actions complied with the FLSA, the Court **GRANTS** summary judgment to Defendant SAR Food on the good faith issue.  And because Defendant SAR Food acted in good faith even if it violated the FLSA, any violations were not willful.  The Court thus **GRANTS** summary judgment to Defendant SAR Food on the willfulness issue as well.[67]

## III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant SAR Food's motion for summary judgment on liability, but **GRANTS** the motion as to good faith and willfulness.

IT IS SO ORDERED

Dated: July 6, 2015                               s/            *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE

---

[67]*Cf. Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) (holding that a finding of willfulness implies a lack of good faith).

-14-